[22 NYS3d 55]

In the Matter of JOHN J. O'BRIEN (Admitted as JOHN JOSEPH O'BRIEN), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 29, 2015

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Raymond Vallejo* of counsel), for petitioner.

*Emery Celli Brinckerhoff & Abady, LLP* (*Hal R. Lieberman* of counsel), for respondent.

OPINION OF THE COURT

Per Curiam.

Respondent John J. O'Brien was admitted to the practice of law in the State of New York by the First Judicial Department on November 20, 1995, under the name John Joseph O'Brien. At all times relevant to these proceedings, he maintained an office for the practice of law within this Judicial Department.

On August 4, 2011, respondent was convicted upon his plea of guilty in the U.S. District Court for the Southern District of New York, of failing to file U.S. income tax returns for 2004 and 2006, and of willfully failing to pay income taxes in 2005 and 2007, all in violation of 26 USC § 7203, a misdemeanor under the United States Code. On January 11, 2012, he was sentenced to a period of incarceration of 28 months, followed by one year of supervised release; he was also ordered to pay $2,866,832 in restitution to the IRS.

By order of June 19, 2012, upon motion of the Departmental Disciplinary Committee, this Court deemed the crimes of which respondent was convicted to be "serious crimes" as defined by Judiciary Law § 90 (4) (d); immediately suspended respondent from the practice of law pursuant to Judiciary Law § 90 (4) (f); and directed a sanction hearing before a Hearing Panel (98 AD3d 60 [1st Dept 2012]).

The Hearing Panel convened a sanction hearing on February 9, 2015, at which respondent testified on his own behalf. He described how he joined a New York law firm as an associate when he graduated from law school in 1992; he was made a partner with the firm in 2001. While taxes had been withheld while he was an associate, once he became a partner his share of the partnership income was remitted to him in full, and it was his responsibility to make quarterly estimated tax payments. Between 2001 and 2003 he made estimated tax payments, but not in a timely manner nor in the full amount owed. In 2003 he belatedly satisfied his 2001 tax liability, but for the tax years 2002 through 2008 he failed to file tax returns or pay

the taxes owed. During this period, he earned approximately $10.8 million in partnership income.

Respondent acknowledged that he understood his tax obligations, and that each year he received a Schedule K-1 memorializing his share of the partnership income, as well as a certification form from the law firm, provided in an effort to ensure partners' compliance with their tax obligations. He also periodically received notices from the IRS and the New York State tax authorities, as well as from the California Franchise Tax Board (CFTB) because a portion of the firm's income was earned in that state. Nevertheless, respondent ignored those obligations in favor of spending all of his earnings on himself and his then live-in partner. In addition to ordinary living expenses, his expenditures included investing $3.2 million in a bookstore he co-owned with his partner; paying approximately $1 million for extensive international travel by his partner for his Ph.D. research; spending between $500,000 and $1 million on the expenses of a cottage he purchased in upstate New York; and paying for vacation trips with his partner to Italy, Spain, London and California multiple times.

In March 2009, the law firm learned from the CFTB of respondent's failure to pay his tax obligations in California, and at the meeting that followed, respondent admitted that he had also failed to pay his federal and New York taxes for years. On March 31, 2009, after the firm concluded that respondent could not continue as a partner there, he resigned his partnership. He then obtained counsel and accountants to calculate and arrange for his voluntary disclosure to the taxing authorities of his tax deficiencies and his proposals to satisfy those liabilities. However, a federal criminal investigation was instituted, resulting in the prosecution and guilty plea underlying this proceeding.

Respondent's psychiatrist testified that she has been treating him for hypersomnia since 2008, and that in addition, after his tax delinquencies were revealed, she also began treating him with antidepressants, which medication he took throughout his incarceration, but has since discontinued. While the psychiatrist identified aspects of respondent's personality that she believed contributed to his misconduct, she did not indicate that his misconduct was caused by any specific psychological impairment.

Respondent also presented the testimony of two character witnesses.

At the close of the hearing, both sides proposed a three-year suspension nunc pro tunc to June 19, 2012, the date of respondent's interim suspension. In its report dated June 23, 2015, the Hearing Panel observed that respondent's failure to comply with his tax obligations was not an accident or the result of financial hardship or illness; rather, respondent simply chose to spend the substantial money he earned rather than file tax returns or pay taxes, and made no effort to rectify the situation until he was caught. On the other hand, the Hearing Panel remarked on respondent's otherwise unblemished record, his cooperation with authorities, his acceptance of responsibility and remorse, and his otherwise good moral character. Balancing the foregoing, it unanimously recommended that a three-year suspension be imposed, and that respondent be reinstated without further proceedings on a showing that he passed the MPRE and earned 24 CLE credits, with the additional condition that he continue to receive mental health treatment for two years and certify that he is in compliance with this condition through mental health progress reports.

The Committee now moves to confirm the Hearing Panel's report in its entirety.

Sanctions for misdemeanor tax offenses have ranged from public censures (*see e.g. Matter of Partland*, 257 AD2d 209 [1st Dept 1999]) to suspensions of varying lengths relating to the extent of misconduct and the balance of mitigating factors and aggravating factors (*see e.g. Matter of Racht*, 120 AD3d 156 [1st Dept 2014] [six-month suspension]; *Matter of Howley*, 70 AD3d 218 [1st Dept 2009] [one-year suspension]; *Matter of Clay*, 229 AD2d 50 [1st Dept 1997] [two-year suspension]). Here, respondent's conduct was not attributable to any medical or psychological condition or any unforeseen extraordinary financial expense, but was simply a choice to live an extravagant lifestyle rather than pay his taxes, until such time as the authorities caught up with him. These aggravating factors warrant the three-year suspension recommended by the Hearing Panel.

However, we decline to adopt the Panel's recommendation that respondent be reinstated without further proceedings, on stated conditions; to that extent, the report is disaffirmed. Rather, as is generally required of attorneys suspended for more than six months, respondent must apply for reinstatement pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.14. Most of the conditions to reinstate-

ment proposed in the Hearing Panel's report will be part of the application for reinstatement; to the extent the report suggests as a further condition that respondent receive mental health treatment for two years and provide proof to the Committee every six months, under the circumstances presented here we decline to impose such a supervisory obligation on the Committee. We also decline to redact or seal the portions of the record relating to respondent's mental health, as respondent requests.

Accordingly, the Committee's motion to confirm the Hearing Panel's report should be granted in part, and respondent suspended from the practice of law in the State of New York for a period of three years, retroactive to June 19, 2012.

MAZZARELLI, J.P., FRIEDMAN, SWEENY, ACOSTA and SAXE, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three years, nunc pro tunc to June 19, 2012, and until further order of this Court.